# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DARLENE J. DEROCHER,

    Plaintiff,

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

    Defendant.

Case No.: 2:17-cv-02401-APG-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 13, 21

This Report and Recommendation is made to the Honorable Andrew P. Gordon, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Remand. (ECF No. 20.) The Commissioner filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion. (ECF No. 21.) Plaintiff filed a reply brief. (ECF No. 22.) When Plaintiff's motion was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security Administration. The new Acting Commissioner is Andrew Saul, and the caption now reflects this change.

After a thorough review, it is recommended that Plaintiff's motion be granted; the Acting Commissioner's motion be denied; and, that this matter be remanded for the calculation and award of benefits.

## I. BACKGROUND

On July 30, 2012, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under

Title XVI of the Social Security Act, alleging disability beginning July 2, 2010. (*See* Administrative Record (AR) 17.) The applications were denied initially and on reconsideration. (AR 203-210, 213-218.)

Plaintiff requested a hearing before an administrative law judge (ALJ). ALJ Norman Bennett held a hearing on November 1, 2013. (AR 69-95 .) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. The ALJ issued a decision finding Plaintiff not disabled on February 12, 2014. (AR 176-190.) Plaintiff appealed that decision to the Appeals Council, and on July 14, 2015, the Appeals Council remanded the decision to the ALJ. (AR 196-201.) The Appeals Council instructed the ALJ on remand to: further evaluate Plaintiff's mental impairments; if available, obtain evidence from a mental health expert to clarify Plaintiff's longitudinal history, nature and severity of her mental impairments and offer an opinion regarding the work-related limitations/restrictions as a result of the mental impairments; give further consideration to Plaintiff's maximum residual functional capacity; and if warranted, obtain supplemental evidence from a Vocational Expert (VE). (AR 200.)

Another hearing was held on January 25, 2016. (AR 44-68.) Plaintiff, represented by counsel, testified, and testimony was also given by a VE. On August 12, 2016, ALJ Bennett issued a second decision finding Plaintiff not disabled. (AR 14-35.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-3, 328.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). The case was reassigned to the undersigned as magistrate judge on October 11, 2019. Plaintiff argues: (1) the ALJ failed to accurately capture all of the limitations contained within the opinions of examining psychologists Dr. Verna Fabella-Hicks and Dr. Lisa Foerster; (2) the ALJ's credibility

determination is legally deficient; and (3) the ALJ's step five finding is not supported by substantial evidence. The Acting Commissioner, on the other hand, argues that the ALJ properly evaluated the medical opinion evidence and Plaintiff's subjective symptoms.

## II. STANDARDS

### A. Disability Process

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

### B. Five-Step Evaluation of Disability

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her

physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's

impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[1]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

---

[1] The Grids look at various combinations of factors relevant to a claimant's ability to work to determine whether the claimant is disabled in certain scenarios.

1    To determine whether substantial evidence exists, the court must look at the record as a

2  whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740

3  F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not

4  affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759

5  F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

6  2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical

7  testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

8  (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the

9  reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740

10  F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a

11  decision supported by substantial evidence will still be set aside if the ALJ did not apply proper

12  legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.

13  2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review

14  only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

15  on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*,

16  340 F.3d 871, 874 (9th Cir. 2003)).

17                                                                **III. DISCUSSION**

18  **A. ALJ's Findings in this Case**

19    In the ALJ's second decision, at step one, he found Plaintiff met the insured status

20  requirements through December 30, 2016, and had not engaged in substantial gainful activity since

21  the alleged onset date of July 2, 2010. (AR 19.) At step two, the ALJ concluded Plaintiff had the

22  following severe impairments: obesity, psychotic disorder, depressive disorder, and substance

23  abuse disorder. (AR 19.) At step three, the ALJ determined Plaintiff did not have an impairment

or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 25.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except that she could: occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; she could stand, walk and sit for six hours in an eight-hour workday; she was limited to performing simple, repetitive tasks; and, she was limited to short, superficial contact with supervisors, co-workers and the general public. (AR 27.) The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 33.)

At step five, the ALJ, relying on VE testimony, determined that considering Plaintiff's age, education, work experience and RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform, including: marking clerk, production helper, and dishwasher. (AR 34.) As a result, the ALJ found Plaintiff not disabled from July 2, 2010, through the date of the decision. (AR 34.)

**B. Mental Health Opinion Evidence**

**1. Dr. Fabella-Hicks**

Plaintiff underwent a psychological evaluation with Dr. Fabella-Hicks through the Nevada Bureau of Disability Adjudication on December 18, 2012 (prior to the first hearing before the ALJ). (AR 828-834.)

Plaintiff reported a family history of schizophrenia. She also had a history of physical and sexual abuse. (AR 829.) Her activities including getting up, making coffee and something to eat, and watching television. (AR 830.) She could cook and wash dishes, and she could shop, but needed someone to help her. She could bathe and dress herself. She could not concentrate on a

task until it was finished, and she could not understand or remember what she would see on television. (AR 831.)

She started mental health treatment as a teenager, but had last attended therapy in November of 2010, after she and her girlfriend were shot at by someone who broke into their home. (AR 829.)[2] She indicated that she suffered from mood swings and anxiety; she had panic attacks several times a week; she did not want to leave the house and feared being in crowds; she experienced nightmares about her trauma; she suffered from insomnia; she had problems with concentration and memory; she would cry frequently, and was irritable and easily frustrated. (AR 829.)

During the evaluation, Plaintiff had a despondent, sullen mood with appropriate affect. She was tearful when she discussed her history of depression and trauma. She rated her depression at an eight on a scale of one to ten, and her anxiety was at a ten. She also reported a history of auditory hallucinations, suicidal ideations, and self-harming behavior. (AR 831.) Dr. Fabella-Hicks indicated that Plaintiff's short term and delayed memory were poor; her immediate memory was average; her fund of general information was fair, and she had a good awareness of current events. (AR 832.) She was diagnosed with depressive disorder, psychotic disorder, and post-traumatic stress disorder (PTSD). (AR 833.)

Dr. Fabella-Hicks opined that Plaintiff was cognitively capable of understanding, remembering and carrying out an extensive variety of complex, detailed as well as simple one- and two-step instructions, but specifically noted: "However, there are other specific limitations in

---

[2] The record reflects that Plaintiff's girlfriend was shot, and survived, and the shots were fired at Plaintiff, but did not hit her.

[Plaintiff's] ability to consistently sustain performance at this level. She reported that she has difficulties related to her mood disorder, psychosis, PTSD." (AR 832-833.)

Next, Dr. Fabella-Hicks concluded that Plaintiff had some social traits that would interfere with her ability to interact with supervisors, co-workers, and the public from a mild to moderate degree. (AR 833.)

Dr. Fabella-Hicks described Plaintiff's prognosis as moderately guarded, citing her chronic history of mental health difficulties. (AR 833.) Dr. Fabella-Hicks stated that Plaintiff's prognosis was expected to improve if she had regular treatment, was consistent and compliant with medications, and participated in psychotherapy to increase her coping skins. (AR 834.) Lastly, Dr. Fabella-Hicks concluded that Plaintiff was capable of managing her own finances. (AR 834.)

The ALJ stated the following regarding Dr. Fabella-Hicks' findings:

> Upon examination, the claimant was judged to be cognitively capable of understanding, remembering, and carrying out an extensive variety of complex instructions. Regarding the claimant's ability to interact with supervisors, co-workers, and the public, [Plaintiff] was thought to have mild to moderate limitations. Finally, regarding the claimant's ability to maintain concentration, persistence, and pace to carry out specified tasks and tolerate work setting stressors, she showed variable concentration and attention throughout the evaluation.

(AR 29.) The ALJ gave Dr. Fabella-Hicks' opinions significant weight, finding them consistent with the record as a whole. (AR 29.)

**2. Dr. Foerster**

Plaintiff underwent a second psychological consultative evaluation with Lisa M. Foerster, Psy. D., on May 9, 2016. Notably, this evaluation took place *after* the second hearing before ALJ Bennett.

Plaintiff reported a history of physical and sexual abuse, auditory hallucinations, suicidal ideations, self-injurious behavior and psychiatric hospitalizations. (AR 1878-79.) She also relayed

feeling anxious and "panicky." She indicated that she had taken psychiatric medication fairly consistently since the age of 19, with the exception of a few years. (AR 1879.) She spent her time watching television, and had anxiety if people were near her. (AR 1880-81.) She would shop every two to three days to get a few items, but would feel overwhelmed if she was in the store for an extended period of time. She left the house to attend doctor appointments or to get fast food. Once a month her caseworker would visit her. She was scared to go outside. (AR 1882.)

Plaintiff was cooperative with the evaluator; she was anxious and overwhelmed with a restricted range of affect that displayed minimal fluctuation; she expressed paranoia, though her thoughts were linear and relevant; she directly answered questions and had appropriate eye contact. (AR 1880.) Dr. Foerster diagnosed her with: borderline personality traits/rule out borderline personality disorder, unspecified psychotic disorder, unspecified depressive disorder, and polysubstance abuse in sustained partial remission. (AR 1882.)

Dr. Foerster opined Plaintiff was not limited in understanding, remembering and carrying out simple instructions, but, she was moderately limited in her ability to make judgments on simple work-related decisions. Plaintiff was markedly limited in her ability to understand and remember complex instructions, and moderately limited in her ability to carry out complex instructions and make judgments on complex work-related decisions. Dr. Foerster stated that due to her symptoms of paranoia, auditory hallucinations and mood lability, Plaintiff's concentration and judgment were compromised. (AR 1883.)

Next, Dr. Foerster opined Plaintiff had marked limitation in her ability to interact appropriately with the public, but mild limitation in her ability to interact appropriately with supervisors and moderate ability to interact appropriately with co-workers and to respond appropriately to usual work situations and changes in a routine work setting. Dr. Foerster included

a notation that due to Plaintiff's paranoia, auditory hallucinations and mood lability, her ability to interact appropriately with others on a regular basis was compromised. (AR 1884.)

Dr. Foerster noted that Plaintiff had a history of mood lability, self-injurious behaviors and multiple psychiatric hospitalizations, and reported a long history of auditory hallucinations and paranoia. Dr. Foerster concluded some of these things were likely related to her history of trauma, but also related to her personality characteristics. Plaintiff reported that she avoided social interaction and generally stayed to herself. Dr. Foerster recommended that Plaintiff continue to participate in psychiatric consultations, and counseling, noting that she would likely require intensive treatment for an extended period of time. (AR 1882.) Finally, Dr. Foerster concluded that Plaintiff was not capable of managing her own finances. (AR 1882.)

The ALJ stated the following regarding Dr. Foerster's findings:

> Dr. Foerster opined that the claimant had marked limitations in understanding and remembering complex instructions, and marked limitations in the ability to interact appropriately with the public; and moderate limitations in the ability to make judgments on simple work-related decisions, moderate limitations in carrying out complex instructions, moderate limitations to make judgments on complex work-related decisions, moderate limitations in the ability to interact appropriately with co-workers, and moderate limitations in the ability to respond appropriately to usual work situations and to changes in routine work settings. Dr. Foerster opined that due to paranoia, auditory hallucinations and mood lability, the claimant's concentration, judgment, and ability to interact appropriately with others on a regular basis was compromised.

(AR 30.) The ALJ gave Dr. Foerster's opinions significant weight, finding them consistent with the record as a whole. (AR 30.)

**3. Analysis**

**a. Dr. Fabella-Hicks**

Plaintiff is correct that while the ALJ acknowledged the portion of Dr. Fabella-Hicks' opinion indicating Plaintiff was cognitively capable of understanding, remembering and carrying

out complex, detailed and simple one- and two-step instructions, the ALJ made no mention of the portion of Dr. Fabella-Hicks' opinion that there were other things that limited Plaintiff's ability to do these things on a sustained basis, referring to her mood disorder, psychosis, and PTSD.

Plaintiff contends that in failing to mention this portion of Dr. Fabella-Hicks' opinion, the ALJ failed to capture all of the limitations Dr. Fabella-Hicks' described in the hypothetical to the VE or the ultimate RFC, and the ALJ gave no reasons for doing so.

The Acting Commissioner argues that Dr. Fabella-Hicks never specified what the limitations were that would impact Plaintiff's ability to consistently sustain performance, but only referenced Plaintiff's subjective complaint of difficulties related to her mood disorder, psychosis and PTSD. The Acting Commissioner further contends that an ALJ may properly reject or discount a medical source opinion that relies on a claimant's subjective report rather than on his/her examination or clinical findings.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). To reject a treating or examining doctor's opinion that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted). "Where an ALJ *does not explicitly reject a medical opinion* or set forth specific legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (emphasis added). Since the ALJ did not address this aspect of Dr. Fabella-Hicks' opinion, or provide any reasons for rejecting it, the ALJ erred.

While the Acting Commissioner is correct that an ALJ may reject or discount a medical source opinion that relies on subjective reports and not clinical findings, the ALJ did not do so

here. Nor did the ALJ cite as a reason for rejecting the opinions that Dr. Fabella-Hicks did not specify the limitations that would impact Plaintiff's ability to sustain performance. Instead, the ALJ afforded Dr. Fabella-Hicks' opinions significant weight, without ever mentioning those aspects of her opinion. Nor did the ALJ incorporate those aspects of Dr. Fabella-Hicks' opinion into the hypothetical posed to the VE at the second hearing. The court may not affirm the ALJ on a ground upon which the ALJ did not actually rely. *See Garrison*, 759 F.3d at 1010 (citation omitted).

The Acting Commissioner further argues that to the extent the ALJ failed to properly address this portion of Dr. Fabella-Hicks' opinion, it is harmless error, citing *Madison v. Berryhill*, 676 Fed.Appx. 633, 634 (9th Cir. 2017).

*Madison* is an unpublished decision. In any event, in that case, the ALJ *did* discount the opinion of the examining psychologist, and the Ninth Circuit panel found that this was proper because the opinion stated that the claimant reported symptoms that might limit his ability to work but did not explain how those symptoms translated into specific functional deficits. Here, by contrast, the ALJ did *not* discount Dr. Fabella-Hicks opinions; instead, the ALJ gave her opinions significant weight, and then failed to mention this aspect of her opinions, let alone set forth reasons for discounting them. In addition, the *Madison* panel found that the ALJ's error in failing to find any explanation for rejecting the opinion of a doctor was harmless where the ALJ included a detailed summary of the medical evidence and opinions which showed improvement, and so the failure to address the opinion was inconsequential to the determination the claimant was not disabled. Here, if the claimant is unable to sustain her ability to do complex, detailed or simple tasks on a regular basis, it is certainly consequential to the disability determination; therefore, *Madison* is inapposite.

1    In sum, the ALJ erred in failing to set forth reasons for rejecting these aspects of

2   Dr. Fabella-Hicks' opinion.

3        **b. Dr. Foerster**

4    Plaintiff argues that the ALJ purported to give significant weight to Dr. Foerster's opinions,

5   but failed to accurately capture all of the limitations in Plaintiff's ability to concentrate and sustain

6   activity for a full workday on a regular and continuing basis.

7    The Acting Commissioner argues that the ALJ acknowledged the limitations opined by

8   Dr. Foerster and reasonably accounted for them in the hypothetical to the VE and in the RFC

9   finding.

10    Here, in contrast to Dr. Fabella-Hicks' opinions, the ALJ's discussion of Dr. Foerster's

11   opinions did accurately summarize Dr. Foerster's opinions, and *did* acknowledge Dr. Foerster's

12   statement that Plaintiff's "concentration, judgment, and ability to interact appropriately with others

13   on a regular basis was compromised." The court agrees with Plaintiff, however, that the ALJ did

14   not appropriately include this aspect of her opinion in the hypothetical to the VE or in the RFC.

15    Dr. Foerster's evaluation of Plaintiff took place *after* the hearing where the ALJ posed the

16   hypothetical to the VE. It was at that second hearing that the ALJ recommended Plaintiff go to

17   another psychological consultative evaluation. (AR 65.) The ALJ stated that he was not sure what

18   the outcome of the evaluation would be, but he was going to pose at least one hypothetical to the

19   VE because there may or may not be another hearing. (AR 65.)

20    The hypothetical the ALJ posed to the VE at the January 25, 2016 hearing proposed an

21   individual who: could lift 20 pounds occasionally and 10 pounds frequently; could stand, sit and

22   walk six hours in an eight-hour workday; and was limited to simple repetitive tasks and short,

23   superficial contact with others (supervisors, co-workers and the public). (AR 66.) The VE testified

that such an individual could not perform Plaintiff's past relevant work, but that such an individual could perform other work including the marking clerk, production helper, and dishwasher positions. (AR 66.) The hypothetical did not ask about whether an individual could perform this work if their concentration, judgment, and ability to interact appropriately with others on a regular basis was compromised.

Plaintiff saw Dr. Foerster on May 9, 2016, and she rendered her opinions on May 29, 2016. (AR 1878.)  The ALJ did not hold another hearing or otherwise re-call the VE to pose a hypothetical encompassing all of Dr. Fabella-Hicks' or Dr. Foerster's opinions. The RFC and step five discussion in the ALJ's decision did not mention the impact these opinions would have on Plaintiff's ability to work. Therefore, the ALJ erred.

The court will address below whether this matter should be remanded for further proceedings or for the payment of benefits in light of these errors concerning the consultative evaluating psychologists' opinions.

**C. Plaintiff's Credibility**

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be

16

expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014-15 (internal quotation marks and citations omitted, emphasis original).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, the ALJ concluded that her statements regarding the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. Following a summary of the medical records and opinion evidence, the ALJ stated:

> I agree with the basic observation of the DDS[3], that if the claimant were to abstain from illicit drugs and alcohol, be in compliance with prescribed treatment, and psych medications, the claimant would be able to perform simple, unskilled work. The record suggests that the claimant's mental impairment is controlled except when she had questionable medication compliance was questionable [sic] and hospitalized. Both Drs. Hicks and Foerster substantially agree that the claimant responded to treatment when she went to treatment.

(AR 33.)

The court agrees with Plaintiff that the ALJ's statement used as the basis for discounting Plaintiff's credibility is not supported by substantial evidence in the record.

---

[3] DDS refers to Disability Determination Services, which are the federally funded State agencies that process Social Security disability claims initially. *See* ssa.gov/disability/determination.htm, last visited January 31, 2020.

First, neither Dr. Fabella-Hicks nor Dr. Foerster stated or implied that Plaintiff responded to treatment when she went. Dr. Fabella-Hicks stated that Plaintiff had a chronic history of mental health difficulties, but it did not seem that she had regular treatment, and concluded that Plaintiff *might* improve if she had regular treatment, including psychotherapy. Dr. Foerster noted Plaintiff's history of mood lability, self-injurious behaviors and multiple psychiatric hospitalizations, as well as a long history of experiencing auditory hallucinations, avoiding social interaction and polysubstance abuse. Dr. Foerster highly recommended that Plaintiff get counseling and participate in psychiatric consultations, noting that she would likely require intensive treatment for an extended period of time. A review of the medical records does not support the ALJ's contention that Plaintiff responded well to treatment when she went, and neither Dr. Fabella-Hicks' nor Dr. Foerster's reports endorse this statement. Instead, Plaintiff's records reveal a long history of mental health issues, and treatment for those issues with a variety of medications, which overall (as will be discussed *infra*), were not successful in alleviating her symptoms.

Second, the ALJ's indication that Plaintiff's credibility should be discounted because he agrees with the DDS statement that if she abstained from illicit drugs and alcohol she would be capable of working is likewise not supported by the record. When Plaintiff saw Dr. Fabella-Hicks, she indicated she was not drinking alcohol or using drugs at the time. (AR 829-39.) While Plaintiff reported a history of alcohol and drug abuse to Dr. Foerster, she denied use in the past seven to eight months. While there are a few instances when Plaintiff was hospitalized and was found to be either drinking or using marijuana, this was not a reoccurring reference in the records. Instead, within the medical records between October 17, 2008 and May 23, 2016, there were only a handful of notations indicating any drug or alcohol use. (AR 1030 (February 20, 2013, alcohol slightly elevated), AR 910 (February 21, 2013, positive for cannabinoids and alcohol), AR 1008 (April 15,

2014, drinking alcohol), AR 862 (May 9, 2013, reported that she smokes marijuana to help control anxiety but it did not really help, and would drink alcohol when stressed) AR 946 (February 17, 2014, reported she does not drink, but smokes marijuana occasionally), AR 943 (May 2, 2014, reported she drinks two beers once a week, and smokes marijuana once a month)). This is consistent with her testimony that she would binge drink for periods of time, and then would not drink for three to four months; and, at the time of her second hearing, she was in AA and had not had a drink (nor smoked marijuana) for nearly four months and was still experiencing symptoms that were even worse than when she was drinking. (AR 50, 52.) In sum, the record reflects that even when she was abstaining from alcohol and illicit drug use, Plaintiff was still having significant mental health symptoms.

Finally, the ALJ's findings that Plaintiff could work if she was compliant with her psychiatric medications and that her mental impairment was controlled except when she had questionable medication compliance is not supported by the record.

Plaintiff reported to Dr. Fabella-Hicks that she was taking her medications but was still suffering from significant mental health symptoms. Plaintiff reported to Dr. Foerster that she had taken psychiatric medication fairly consistently, with the exception of a few years. Nevertheless, both of these providers noted a long history of chronic mental health issues.

The Acting Commissioner argues that where there is evidence that a claimant's impairment is controlled by treatment or medications, the ALJ may properly find that the statements about the intensity, persistence or limiting effects of the symptoms are not consistent with the evidence in the record. (ECF No. 21 at 11.) Again, Drs. Fabella-Hicks and Foerster still opined Plaintiff was limited or compromised in her ability to engage in work on a sustained basis even when she was taking her medications. In addition, the Ninth Circuit has stated: "we do not punish the mentally

19

ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of the claimant's underlying mental afflictions." *Garrison*, 759 F.3d 995, n. 24 (citing *Martinez v. Astrue*, 639 F.3d 693, 697 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010); *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). The Eighth Circuit put it this way: "federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse." *Pate-Fires*, 564 F.3d at 945 (internal citations and quotations omitted). Furthermore, the record indicates that overall Plaintiff was generally compliant with taking her medications.

The court has reviewed in detail the nearly 1900 page administrative record, which contains evidence that Plaintiff has a long history of mental health symptoms and diagnoses, including: depression, anxiety, panic attacks, auditory and visual hallucinations, delusions, paranoia, mood instability and irritability, difficulty with sleep, difficulty concentrating, flight of ideas and racing thoughts, low energy on the one hand and then high energy on the other hand with grandiose thoughts, suicidal ideations and self-injurious behavior, bipolar disorder, PTSD, and schizoaffective disorder. She also has a family history of mental health issues, including schizophrenia. Her mental health providers indicated that her symptoms resulted both from experiencing several traumatic events that included sexual, physical and mental abuse as a child and as an adult, and underling personality traits. She was treated for her mental health symptoms on an outpatient basis, and also had numerous inpatient psychiatric admissions. (AR 529, 560 - 565, 568-69, 571-73, 619, 622, 631, 706, 783, 787, 789, 792-801, 814-16 819-21, 826, 837, 843, 847, 850, 852-53, 861-65, 868, 871, 873-74, 877, 889-895, 910-11, 914, 915-16, 942-47, 949-951, 953-954, 957-958, 960, 999, 1005, 1008, 1010, 1029-30, 1265-1271 1353, 1358, 1360, 1363,

1449, 1539, 1541, 1556-1557, 1608, 1679-1688, 1690-1697, 1802-1803, 1872, 1886-1889, 1891-92.)

The overall takeaway from a review of the records is not that Plaintiff's symptoms were controlled except when she was not in compliance with her medications, as the ALJ suggests. Instead, the records reveal that Plaintiff was placed on and took *many* medications to try and control her mental health symptoms.[4] While there are a few instances noting a failure to take her medications, most of the records indicate that she was taking them. Moreover, when she was not taking them, she often complained that she experienced side effects, she did not feel the medications were effective, she could not obtain them, her housing status was in flux, or she had endured a traumatic event. In addition, at times, she could not take medications that her providers thought would benefit her because her insurance company would not approve them and she could not afford to pay for them out of pocket. The records are consistent with her testimony on this topic: that she tried many medications, they would work for a while and then would stop working and when they would increase the dose she would have side effects; and, that her insurance would not cover some of the drugs that were thought to benefit her. (AR 53, 55, 76.)

This is a woman who endured numerous traumatic events, had a family history of mental health problems, had an unstable childhood, was homeless and lived in group homes on and off for many years, and had virtually no support system. The record certainly paints a picture of the exact scenario the Eighth and Ninth Circuits described in *Pate-Fires* and *Garrison:* the departures

---

[4] The records reflect that she had taken: Ambien, Atenolol, Ativan, Buspar, Celexa, Clonazepam (brand name Klonopin), Cogentin, Depakote, Effexor, Geodon, Haldol, Hydroxyzine (brand name Vistaril), Lamictal, Latuda, Lexparo, Lithium, Paxil, Prazosin, Prochlorperazine, Prozac, Remeron, Requip, Risperdal, Saphris, Seroquel, Synthroid, Trazodone, Trileptal, Xanax, and Zyprexa.

from prescribed medications, when they occurred, were undoubtedly "part of her underlying mental afflictions" and were "neither willful nor without a justifiable excuse." In sum, the majority of the medical records suggest that being noncompliant with her medications was not the norm, and when she was compliant with her medications she still had symptoms, which were often severe. (AR 529, 536, 539, 541, 547, 551, 550, 557, 560, 561, 563, 565, 569, 572-73, 620, 709, 783-799, 806, 814, 819, 837-39, 841, 847, 850, 852-53, 861-63, 864-66, 868, 871-74, 877, 889-893, 899, 910, 912, 914, 944, 946-947, 950, 953-954, 957-958, 959-960, 1010, 1449, 1455, 1679-1688, 1690-1691, 1693-1697, 1886-1889, 1891.)

In conclusion, the court finds the ALJ did not set forth legally sufficient reasons supported by substantial evidence for discounting Plaintiff's credibility; therefore, the ALJ erred.

**D. Step Five**

Plaintiff argues that the ALJ's finding at step five that Plaintiff could perform other work is improper because: (1) the dishwasher occupation is described in the Dictionary of Occupational Titles (DOT) (DOT 318.687-010) as a medium exertional job, and the ALJ found Plaintiff could perform a limited range of light work; and (2) the hypothetical posed to the VE and the VE's answer, which formed the basis of the ALJ's conclusions, did not contain all the limitations and restrictions, including Plaintiff's credible allegations and all aspects of the opinions of the examining psychologists.

Plaintiff is correct that DOT 318.687.010 is categorized as medium work. The ALJ found Plaintiff could perform a limited range of light work, and did not elicit an explanation from the VE for the apparent contradiction between the RFC and the DOT classification; therefore, the ALJ erred. *See Zavalin v. Colvin,* 778 F.3d 842, 846 (9th Cir. 2015); *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).

Additionally, Plaintiff is correct that the ALJ's hypothetical to the VE did not encompass all of the limitations opined by the examining psychologists, and the ALJ did not set forth legally sufficient reasons for discounting those opinions; therefore, the ALJ also erred in this regard. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations and quotation marks omitted omitted) ("Hypothetical questions posed to a VE must set out *all* the limitations and restrictions of the particular claimant.").

**E. Remand for Further Proceedings or For Award of Benefits**

Finding the ALJ committed multiple errors, the court must now determine whether to remand for further proceedings or remand for the calculation and award of benefits.

The court, after reviewing an action challenging the final decision of the Commissioner of Social Security, has the "power to enter, upon pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, *with or without remanding the cause for a rehearing*." 42 U.S.C. § 405(g) (emphasis added). Thus, "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019 (citing cases from every circuit).

The Ninth Circuit discussed the scope of this power in *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396 (9th Cir. 1988) (*Varney II*). It was in that case that the Ninth Circuit announced the "credit-as-true" rule, holding:

> [W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will … take that testimony to be established as true.

1   *Id.* at 1401. The following year, the Ninth Circuit held that the credit-as-true rule also applies to

2   medical opinion evidence. *See Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989).

3          In subsequent years, the Ninth Circuit came up with a three-part standard to satisfy the

4   credit-as-true rule before a court may remand with instructions to calculate and award benefits.

5   Courts must consider: (1) "whether the ALJ failed to provide legally sufficient reasons for rejecting

6   evidence, whether claimant testimony or medical opinion[;]" (2) "whether there are outstanding

7   issues that must be resolved before a disability determination can be made, … and whether further

8   administrative proceedings would be useful[;]" and (3) "[w]hen these first two conditions are

9   satisfied, we then credit the discredited testimony as true for purposes of determining whether, on

10  the record as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041, 1045

11  (9th Cir. 2017) (internal quotation marks and citations omitted); *see also Treichler v. Comm'r of*

12  *Soc. Sec. Admin.*, 775 F.3d 1090, 1100-1101 (9th Cir. 2014) (citations omitted); *Garrison*, 759

13  F.3d at 1020 (citations omitted).

14         In *Garrison*, the Ninth Circuit reiterated its prior conclusion that the "credit-as-true rule

15  may not be dispositive of the remand question in all cases." *Id.*  Instead, the rule "envisions 'some

16  flexibility.'" *Id.* (citation omitted). Noting that the court had not yet exercised such flexibility or

17  clarified the scope of flexibility, the court addressed that issue in *Garrison*. The Ninth Circuit

18  explained the flexibility as follows: even if all the conditions of the credit-as-true standard are

19  satisfied, remand for calculation and award of benefits is not appropriate if "an evaluation of the

20  record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. The court

21  described this interpretation of flexibility as aligning the rule with "the basic requirement that a

22  claimant be disabled in order to receive benefits." *Id.* The Ninth Circuit described it in subsequent

23  cases as having the court consider "whether the record taken as a whole, leaves not the slightest

uncertainty as to the outcome of [the] proceeding." *Treichler*, 775 F.3d at 1101 (citation and quotation marks omitted); *see also Leon*, 880 F.3d at 1044 (citations omitted).

In *Garrison*, the Ninth Circuit found that the district court's remand for further proceedings was improper where the claimant satisfied all components of the credit-as-true standard and there was nothing in the record to suggest that the claimant was not in fact disabled. *Id.*

The Ninth Circuit addressed the credit-as-true rule again later that year in *Treichler*, and then in 2017 in *Leon v. Berryhill*. In *Treichler* and *Leon*, the Ninth Circuit confirmed that the exercise of authority to remand for calculation and award of benefits is discretionary and should be a rare departure from the ordinary remand rule. *Leon*, 880 F.3d at 1045; *Treichler*, 775 F.3d at 1100, 1102, 1103 (citations omitted). *Leon* also clarified that even when all of the credit-as-true rule's conditions have been satisfied, remand for an immediate award of benefits is not required. *Leon*, 880 F.3d at 1045.

In *Treichler*, the court concluded that the ALJ erred in discrediting the claimant's subjective symptom testimony, finding that the vague statement that the claimant's testimony was inconsistent with the medical evidence without citing any specific findings was insufficient. *Id.* at 1103. The claimant argued his case should be remanded for an award of benefits. While the ALJ had erred in rejecting the claimant's testimony, the Ninth Circuit found that there were significant factual conflicts between the claimant's testimony and the medical evidence and so the case should be remanded for further proceedings. *Id.* at 1104-05.

In *Leon*, the ALJ did not properly consider evidence of the claimant's claim of fatigue when the ALJ ignored the findings of two nurse practitioners, and did not provide legally sufficient reasons for rejecting the claimant's testimony and his stepdaughter's corroborating testimony about his fatigue. *Id.* at 1046. The Ninth Circuit found, however, that the district court (without the

benefit of *Treichler*) improperly applied the credit-as-true analysis because it did not consider whether the record was fully developed or further administrative proceedings would be useful. The court pointed out that none of the medical providers observed fatigue to the extent of the claimant's testimony, and additional evidence might be enlightening regarding whether the claimant's symptoms are or would be reduced by the use of a CPAP machine. *Id*. at 1047. Additionally, the court said that even if the record had been developed and the evidence was credited as true, it was not certain the ALJ would be required to find the claimant disabled.

While the Acting Commissioner may disagree with the Ninth Circuit's credit-as-true jurisprudence (*see* ECF No. 21 at 12), this court is bound by those decisions, and the Ninth Circuit in *Garrison* rejected the Commissioner's argument that the standard was invalid. *See Garrison*, 759 F.3d at 1020 n. 25. The court will now address whether Plaintiff satisfies the components of the credit-as-true standard, and whether there is anything in the record as a whole that suggests Plaintiff is not in fact disabled.

The first component of the credit-as-true standard is obviously satisfied since the court concluded that the ALJ erred in failing to provide legally sufficient reasons for discrediting Plaintiff's testimony and the opinions of the examining psychologists and with respect to step five.

Next, the court must consider whether the record has been fully developed and whether further administrative proceedings would serve a useful purpose. "Administrative proceedings are generally useful where the record has [not] been fully developed, …there is a need to resolve conflicts and ambiguities, …, or the presentation of further evidence … may well prove enlightening' in light of the passage of time[.]" *Treichler*, 775 F.3d at 1101 (internal citations and quotation marks omitted).

The Ninth Circuit has stressed that precedent "foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan [to revisit the medical opinions and testimony that were improperly rejected] qualifies as a remand for a 'useful purpose' under the … credit-as-true analysis." *Garrison*, 759 F.3d at 1021-22 (citations omitted).

In *Garrison*, the Commissioner argued that further proceedings were required because the ALJ did not make an RFC determination based on the opinions that were improperly rejected. *Garrison*, 759 F.3d at 1021, n. 28. The Ninth Circuit rejected this argument, explaining that "ALJs rarely base their RFC determinations on opinions or testimony that they have rejected (and it will always be such opinions or testimony that are at issue in credit-as-true cases)." *Id*. The Ninth Circuit further stated: "Instead, we have considered whether the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true." *Id*. (citing *Lingenfelter*, 504 F.3d at 1041; *Varney II*, 859 F.2d at 1401). In *Garrison*, the court found that the ALJ and the claimant's counsel posed questions to the VE matching the claimant's testimony and the opinions of the medical providers whose opinions were improperly rejected, and in response  stated that such a person would be unable to work. *Id*.

Here, Dr. Fabella-Hicks evaluated Plaintiff in December of 2012 and opined that while Plaintiff might be cognitively capable of understanding, remembering and carrying out a variety of complex, detailed and simple one- or two-step instructions, she had other limitations related to her mood disorder, psychosis and PTSD that impacted her ability to consistently sustain performance. (AR 832-833.) The ALJ did not elicit any VE testimony in the first hearing, and the Appeals Council remanded with instructions for the ALJ to obtain evidence from a mental health expert to clarify Plaintiff's longitudinal history, nature and severity of her impairments and offer

an opinion regarding her work-related limitations and restrictions as a result of her mental impairments, further consider her maximum RFC, and if warranted obtain supplement evidence from a VE. The ALJ held a second hearing on January 25, 2016. It was at that hearing that the ALJ recommended that Plaintiff go to another psychological consultative evaluation, and indicated that he may or may not have another hearing. (AR 65.) Nevertheless, the ALJ posed a single hypothetical to the VE asking whether a person who could lift 20 pounds occasionally, and 10 pounds frequently, could sit, stand and walk six hours in an eight-hour workday, and was relegated to simple, repetitive tasks and short, superficial contact with others could perform any work. (AR 66.) The VE testified this individual could perform the marking clerk, production helper and dishwasher positions. (AR 66.)

Plaintiff's counsel adjusted the hypothetical to add that the person would be off task for 20 percent or more of the day due to distracting auditory hallucinations, and the VE testified there was no work the person could perform. (AR 67.)

Dr. Foerster evaluated Plaintiff on May 9, 2016, and issued her opinions on May 29, 2016. Again, Dr. Foerster opined that due to paranoia, auditory hallucinations, and mood lability, Plaintiff's concentration, judgment and ability to interact appropriately with others on a regular basis was compromised. The ALJ specifically acknowledged this opinion, but did not include it in the RFC in his second decision, and did not hold another hearing or otherwise obtain supplemental VE testimony.

While the hypothetical posed by the ALJ and the variation by Plaintiff's counsel at the second hearing does not precisely match Dr. Foerster's opinion that Plaintiff's concentration, judgment and ability to interact appropriately with others on a regular basis was compromised, the regulations and Social Security Administration (SSA) policy interpretations (Social Security

Rulings (SSRs)) nevertheless make clear that a person must have the ability to perform the assessed level of work *on a regular and continuing basis*. *See e.g.* 20 C.F.R. § 404.1545(c) (SSA "ass[es] the nature and extent of [the claimant's] mental limitations and restrictions and then determine[s] [the claimant's] [RFC] for work activity *on a regular and continuing basis*."); SSR 96-8P, 1996 WL 374184 ("RFC is an assessment of an individual's ability to do *sustained* work-related physical and mental activities in a work setting *on a regular and continuing basis*. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. … "In assessing RFC, the adjudicator must discuss the individual's ability to perform *sustained* work activities in an ordinary work setting *on a regular and continuing basis …*"); SSR 85-16, 1985 WL 56855 (inability to perform substantial gainful activity for mental impairments that are not a Listed Impairment "must be demonstrated through a detailed assessment of the individual's capacity to perform *and sustain* mental activities which are critical to work performance.").[5] The VE testified that a person who was off task 20 percent of the time due to auditory hallucinations, but further testimony from the VE to ask about the specific language from Dr. Foerster's opinion is not necessary where the regulations and SSRs make clear that the inability to perform the assessed work on a continuing basis should result in a finding of disability.

The court further finds that the record has been fully developed. It spans nearly 1900 pages and consists of a litany of medical records from Plaintiff's treating providers. In addition, Plaintiff underwent two consultative mental health evaluations and had two hearings before the ALJ. The court has reviewed the lengthy record in detail, and finds that unlike *Treichler,* there are no

---

[5] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

significant factual conflicts between the claimant's testimony and the medical evidence. Nor are there other gaps or ambiguities. The court does not find that further testimony would prove enlightening at this point.

Finally, nothing in the record suggests that the claimant was not in fact disabled. The Acting Commissioner includes a conclusory argument that conflicting and ambiguous evidence requires a remand for further proceedings, but does not point out what evidence is conflicting or ambiguous and "explain how that evidence casts into serious doubt [Plaintiff's] claim to be disabled." *Garrison*, 759 F.3d at 1022. Instead, the court's review of the record reflects that the treating providers' records, Plaintiff's testimony and the consultative examining providers' reports appear consistent. Plaintiff has a long history of chronic mental illness for which she has received outpatient and inpatient treatment. The records of her treating providers as well as those of her consultative examining psychologists consistently demonstrate that she has been on a litany of medications without much success in controlling her symptoms. On medications, she still suffered from chronic anxiety, panic attacks, depression, mood swings, auditory hallucinations. She had many instances of suicidal ideations and self-injurious behavior, which usually precipitated her inpatient treatment. All of this supports the consultative psychologists' conclusions that Plaintiff could not maintain concentration, judgment, and interact appropriately with others on a regular and sustained basis. Therefore, it is recommended that this matter be remanded for the ALJ to find Plaintiff disabled and calculate and award benefits.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order: **GRANTING** the Plaintiff's motion (ECF No. 20); **REMANDING** this matter for a finding of disability and

calculation and award of benefits consistent with this Report and Recommendation; and **DENYING** the Acting Commissioner's cross-motion (ECF No. 21).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 31, 2020.

William G. Cobb
United States Magistrate Judge

31